ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**NORTHERN DISTRICT OF OHIO**

<u>CHARLES A. URBAN</u>
Plaintiff

-V-

GARY MOHR
LASHANN EPPINGER
JENNIFER GILLICE
DOE ROEDIK
MAJOR BROWN
STEPHEN REYNOLDS
MYRON COSTIN
RN CARNAHAN
LIEUTENANT DIAMOND
LIEUTENANT JACKSON
LIEUTENANT LAWERENCE
RN LANGSTON
ALP BELTZ
ADAM KASTLER
DANIEL REED
DOE WOLFE
DOE KITE

_____
Defendant's

**1:19 CV 00914**

CIVIL CASE NO._____

JUDGE_____ JUDGE GWIN

MAG. JUDGE GREENBERG

**FILED**
APR 23 2019
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
(Prisoner Complaint)

1

## I. Previous Lawsuits

**A.** Have you begun other lawsuits in the state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment? **NO**

## II.  Place of Present Confinement <u>NORTH EASTERN OHIO CORRECTIONAL CENTER</u>

**A.** Is there a prisoner grievance procedure in this institution? **YES**

**B.** Did you present the relating to your complaint in the state prisoner grievance procedure? **YES**

**C.** If your answer is YES,

1. What steps did you take? <u>I filed an informal complaint resolution to Warden Eppinger, then I filed a NOTIFICATION OF GRIEVANCE to the INSTITUTIONAL INSPECTOR, then I filed an APPEAL OF GRIEVANCE to the CHIEF INSPECTOR.</u>

2. What was the result? <u>Fabrication of the facts and denial.</u>

## III. The Parties to This Complaints

**A.**     **The Plaintiff**

| | |
|---|---|
| Name | **CHARLES A. URBAN** |
| ID Number | **66226060** |
| Current Institution | **Northeast Ohio Correctional Center** |
| Address | **2240 Hubbard Road** |
| | **Youngstown**       **Ohio**       **44505** |
| | City                    State          Zip Code |

**B.**     **The Defendant's**

| | |
|---|---|
| Defendant No. 1 Name | **GARY MOHR** |
| Job or Title | **DIRECTOR** |
| Employer | **OHIO DEPARTMENT OF REHABILATION AND CORR.** |

2

Address     **770 WEST BROAD STREET**

**COLUMBUS**      **OHIO**      **43222**
City          State       Zip Code

**YES, Individual capacity  & YES, Official capacity**

Defendant No. 2
Name     **LASHANN EPPINGER**

Job or Title     **WARDEN**

Employer     **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address     **2500 S. AVON-BELDON ROAD.**

**GRAFTON**      **OHIO**      **44044**
**City**         **State**       **Zip Code**

**YES, Individual capacity  & YES, Official capacity**

Defendant No. 3
Name     **MAJOR BROWN**

Job or Title     **MAJOR**

Employer     **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address     **2500 S. AVON-BELDON ROAD.**

**GRAFTON**      **OHIO**      **44044**
**City**         **State**       **Zip Code**

**YES, Individual capacity  & YES, Official capacity**

Defendant No. 4
Name     **JENNIFER GILLICE**

Job or Title     **DEPUTY WARDEN**

Employer     **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address     **2500 S. AVON-BELDON ROAD.**

**GRAFTON**      **OHIO**      **44044**

3

|                | City              | State         | Zip Code        |

YES, Individual capacity  & YES, Official capacity

Defendant No. 5
Name                 **STEPHEN REYNOLDS**

Job or Title         **DEPUTY WARDEN**

Employer             **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address              **25OO S. AVON-BELDON ROAD.**

| **GRAFTON** | **OHIO** | **44044** |
| City | State | Zip Code |

YES, Individual capacity  & YES, Official capacity

Defendant No. 6
Name                 **DOE ROEDIC**

Job or Title         **UNIT MANAGER ADMINSITRATOR**

Employer             **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address              **25OO S. AVON-BELDON ROAD.**

| **GRAFTON** | **OHIO** | **44044** |
| City | State | Zip Code |

YES, Individual capacity  & YES, Official capacity

Defendant No. 7
Name                 **ADAM KASTLER**

Job or Title         **WARDEN'S ASSISTANT**

Employer             **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address              **25OO S. AVON-BELDON ROAD.**

| **GRAFTON** | **OHIO** | **44044** |
| City | State | Zip Code |

YES, Individual capacity  & YES, Official capacity

4

Defendant No. 8
Name        **MYRON COSTIN**

Job or Title        **MAINTENANCE**

Employer        **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address        **25OO S. AVON-BELDON ROAD.**

       **GRAFTON**        **OHIO**        **44044**
       **City**        **State**        **Zip Code**

       **YES, Individual capacity  & YES, Official capacity**

Defendant No. 9
Name        **LIEUTENANT DIAMOND**

Job or Title

Employer        **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address        **25OO S. AVON-BELDON ROAD.**

       **GRAFTON**        **OHIO**        **44044**
       **City**        **State**        **Zip Code**

       **YES, Individual capacity  & YES, Official capacity**

Defendant No. 10
Name        **LIEUTENANT JACKSON**

Job or Title

Employer        **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address        **25OO S. AVON-BELDON ROAD.**

       **GRAFTON**        **OHIO**        **44044**

|        | City | State | Zip Code |
|---|---|---|---|

YES, Individual capacity  & YES, Official capacity

| Defendant No. 11 | |
|---|---|
| Name | **LIEUTENANT LAWERENCE** |
| Job or Title | |
| Employer | **OHIO DEPARTMENT OF REHABILATION AND CORR.** |
| Address | **25OO S. AVON-BELDON ROAD.** |

|        | **GRAFTON** | **OHIO** | **44044** |
|---|---|---|---|
|        | City | State | Zip Code |

YES, Individual capacity  & YES, Official capacity

| Defendant No. 12 | |
|---|---|
| Name | **LANGSTON** |
| Job or Title | **RN** |
| Employer | **OHIO DEPARTMENT OF REHABILATION AND CORR.** |
| Address | **25OO S. AVON-BELDON ROAD.** |

|        | **GRAFTON** | **OHIO** | **44044** |
|---|---|---|---|
|        | City | State | Zip Code |

YES, Individual capacity  & YES, Official capacity

| Defendant No. 13 | |
|---|---|
| Name | **BELTZ** |
| Job or Title | **ALP** |
| Employer | **OHIO DEPARTMENT OF REHABILATION AND CORR.** |
| Address | **25OO S. AVON-BELDON ROAD.** |

6

| **GRAFTON** | **OHIO** | **44044** |
|:---:|:---:|:---:|
| City | State | Zip Code |

**YES, Individual capacity  & YES, Official capacity**

**Defendant No. 14**
Name        **CARNAHAN**

Job or Title    **RN**

Employer

Address      444 Southwood Dr.

| Elyria | Ohio | 44035 |
|:---:|:---:|:---:|
| City | State | Zip Code |

**YES, Individual capacity  & YES, Official capacity**

**Defendant No. 15**
Name        **DANIEL REED**

Job or Title    **MAINTENANCE**

Employer    **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address      **2500 S. AVON-BELDON ROAD.**

| **GRAFTON** | **OHIO** | **44044** |
|:---:|:---:|:---:|
| City | State | Zip Code |

**YES, Individual capacity  & YES, Official capacity**

**Defendant No. 16**
Name        **DOE WOLFE**

Job or Title    **MAINTENANCE   RETIRED**

Employer    **OHIO DEPARTMENT OF REHABILATION AND CORR.**

7

Address          **2500 S. AVON-BELDON ROAD.**

**GRAFTON**          **OHIO**          **44044**
City                    State                    Zip Code
**YES, Individual capacity  & YES, Official capacity**

Defendant No. 17
Name          **DOE KITE**

Job or Title          **MAINTENANCE**

Employer          **OHIO DEPARTMENT OF REHABILATION AND CORR.**

Address          **2500 S. AVON-BELDON ROAD.**

**GRAFTON**          **OHIO**          **44044**
City                    State                    Zip Code

**YES, Individual capacity  & YES, Official capacity**

### IV. Basis for Jurisdiction

Under 42 U.S.C. 1983

I am bringing this suit against State officials (a 1983 claim)

Eighth and Fourteenth Amendment claim under 42 U.S.C. 1983 for the denial of medical treatment.

Eighth and Fourteenth Amendment claim under 42 U.S.C. 1983 for the conditions of the plaintiffs confinement that constituted cruel and unusual punishment.

Defendant's in this claim are persons who acting under color of law, determine or are responsible for the conditions in the Ohio prisons, GRC, or for specific incidents referred to herein.

8

### V.  Prisoner Status

Pretrial detainee

# VI.   Statement of Claim

1) On or about May 5th 2017, I began to notice a strong gas like smell in the C-2-B-side housing unit of the Grafton Reintegration Center, located at 2500 S. Avon-Beldon Road, Grafton, Ohio 44044. This is a prison ran by the Ohio Department of Rehabilitation and Corrections.

2) I personally brought this to the attention of the correctional officers working on shift in the  C-2-b-side housing unit. That correctional officer made an entry in the departments electronic log book (Elog) documenting the incident.

3) Over the course of roughly the next three months, I continuously noticed the smell of gas and became ill due to the effects of this exposure. I constantly experienced sharp needle like pains in my chest, severe muscle spasms, shortness of breath, headaches, drowsiness, and nausea  throughout this time.

4) Myself and others complained to the following correctional officers ( Hanko, Carmichael, Lalonde, Watson, Arnau, Sheldon, Phillips, Rodgers) working in the C-2-B-side housing at the Grafton Reintegration Center.

5) These correctional officers would notify the following shift supervisors about the smell of gas in the C-2-B-side housing unit; Lieutenants Diamond, Jackson, and Lawrence, who are defendant's in this action because they disregarded the seriousness of the situation by failing to take appropriate action. I personally complained to these Lieutenant's repeatedly about the exposure.

6) Some of these correctional officers also wrote incident reports, work orders, and also notified the maintenance department.

7) Being that the maintenance department and shift supervisors failed to take appropriate action to prevent this exposure, I immediately began notifying all the upper management staff about this continued problem and the lack of help from all that were notified before them, every time that

they did rounds in the C-2-B-side housing unit. I personally notified Warden Eppinger, Deputy Warden Gillice, Deputy Warden Reynolds, Unit Manger Administrator Roedik, and Major Brown. I would also bring it to their attention when I would see them elsewhere in the institution, that nothing was being done and that the problem continued, and to please due something about the problem.

8) I pointed out the source of the problem to Major Brown in the presence of Deputy Warden Gillice on their rounds in the C-2-B-side housing unit as I had before. Major Brown claimed that it was a sewer problem. Myself and other inmates told him that it was semi burnt gas and carbon monoxide being pulled back into the housing unit, due to the fact that there was a HVAC intake ceiling fan located right next to the exhaust pipes that led to the roof from the boiler and furnace, and that the 20 plus year old Reznore furnace was poorly maintained and a part was broke.

9) On July 27th 2017, my condition was so bad and obvious, that correctional officer Phillips immediately knew that something was wrong with me due to the exposure of these fumes in the C-2-B-side housing unit. He contacted nurse Carnahan about my condition and requested help. However, this nurse told the correctional officer to have me go outside and get some fresh air. This officer was so concerned about my health that he continued to check on me once I was outside.

10) Due to the continued blatant disregard to my health and safety, a friend of mine called the Correctional Institution Inspection Committee on July 28th 2017, to inform them of the problem in the Grafton Reintegration Center C-2-B-side housing unit.

11) On July 28th 2017,  the Correctional Institution Inspection Committee emailed the Warden at the Grafton Reintegration Center about the call and the problem, giving him further notice.

12) Being that nothing was done and the problem continued my friend called the following on

11

August 1st 2017, to notify them again about the problem, and that nothing was being done. (the Correctional Institution Inspection Committee 614-466-6649 @ 2:41PM , the Grafton Reintegration Center's Warden office 440-748-1161 @ 2:47PM, and the Ohio Department of Rehabilitation and Correction's Central office 614-387-0588 @ 2:44PM).

13) On August 2nd , 2017, The Warden's assistant Adam Kastler responded to the email from the Correctional Institution Inspection committee. This email was forwarded to Myron Costin and Daniel W. Reed of the Maintenance Department, and also Deputy Warden Stephen Reynolds.

14) On August 3rd , 2017, Daniel Reed of the maintenance department sent an email to Myron Costin also of maintenance stating that "all preventive maintenance has been completed on the gas regulators for the GRC housing units.

15) On August 3rd , 2017, Myron Costin sent an email to Adam Kastler stating "Adam, PM has been completed on all 3 GRC housing unit gas regulators. There are no leaks.

16) The problem still continued and I complained to every staff member about the problem and the lack of meaningful help.

17) On August 13th , correctional officer Rodgers made an entry in the electronic log book for the C-2- housing unit about inmates complaining about gas.

18) On August 25th, 2017 at 10:56AM maintenance walked in the C-2 housing unit, never coming to B-side. The worker said he did not smell anything and walked out. This was after we complained to the correctional officers on shift and they contacted maintenance after smelling the gas themselves.

19) On August 25th , 2017, my friend called the Columbia Gas Company @ 1-800-344-4077, about this continued problem at the GRC'S C-2-B-side housing unit. Upon the arrival of the Columbia Gas Company at GRC'S main entrance, they were greeted by correctional officer Hines. The person from the gas company notified him that they received a call specifically about the C-2-

B-side housing unit. Hines notified Lieutenant Lawrence about this and he denied them entry, despite having actual knowledge of the problem.

20) On August 25th , 2017, my friend also contacted the Grafton Fire Department @ 440-926-2075 about the problem in the c-2-b-side housing unit.

21) On August 25th , 2017, Lieutenant Lawrence came to the housing unit and did a round on the C-2-b-side housing, shouting "some idiot had his people call the housing unit." Dismissing the seriousness of the problem.

22) On August 26th, 2017 there should a log entry about the problem in the C-2-B-side housing unit.

23) On August 27th ,2017 there should a log entry about the problem in the C-2-B-side housing unit.

24) On August 31st , 2017, unit managers Ms. Long and Ms. Lottman were called to the bed area of the C-2-B-side housing unit because of the potent and obvious smell of gas. Many inmates complained that nothing was being done, despite the many attempts that we made for help. Ms. Long and correctional officer Hanko confirmed the smell and notified Deputy Warden Reynolds and demanded that something be done.

25) I was extremely ill this day, due to the exposure. Correctional Officers made an attempt to have me seen right away due to the symptoms that I was having (chest pain, severe muscle spasms, shortness of breath, headaches, drowsiness, and nausea). Despite the seriousness of my apparent medical need, I was denied treatment. The medical staff knew what was going on and told the officer to have me put in a nurse sick call slip, and hung up. The correctional officer called back to identify whom they were speaking with and they said just write up medical and hung up again. My condition was so serious and obvious that correctional officer allowed me to stay in the day room during count to keep me away from the source of the exposure. I was denied medical treatment despite it being a clear need for emergency attention. When Deputy Warden Reynolds made it to the housing unit, he was met with complaints from me and other inmates

13

about the long ongoing problem of exposure to these toxic fumes and the failure to protect us. I told him that I needed to see medical because of my symptoms and that medical refused to see me. He did nothing to help.

26) Due to the denial of medical treatment, I sought out help from mental health On August 31st, 2017. Upon my arrival to medical, I encountered RN Langston. I asked him to please help me. I told him about the exposure, and he responded by saying "it is alleged and to put in a sick call slip like everybody else." He also said that we are not going drop what we are doing for you." After this conversation I was called into mental health. I informed the mental health provider Rod Krausher about being distressed about the fumes from the natural gas and all the medical symptoms that I was having. I also informed him of the records in the log-books made by staff, that I spoke to Deputy Warden Reynolds about the exhaust stacks being poorly designed, me contacting everyone in the DRC system and that I notified family, and outside agencies. I related my symptoms. I requested medical intervention and was denied. The mental health provider spoke with correctional officer Hanko, who confirmed a problem and that Deputy Warden Reynolds and appropriate staff are aware of the situation.

27) I personally spoke with the State Fire Marshall on his rounds in the C-2-B-side housing unit about the problem. He informed me that he was aware of the problem and that the institution had an outside contractor the day of his visit to remedy the problem.

28) On September 5th, 2017, I was finally seen by medical. I informed the RN and ALP Beltz that I was having symptoms in correlation to the exposure of toxic fumes, natural gas and carbon monoxide in the C-2-B-side housing unit. The ALP Beltz was disrespectful and not receptive. I asked her how long did this type of stuff stay in the system and she stated a week and ordered panels. Nonetheless, the panels that she ordered were not the type that a health care would order for someone associated with exposure to toxic fumes in gas/co2.

14

29) On September 28th , 2017, I was again seen by medical. I complained that I was still having symptoms.

30) On September 20th , 2017, I was again seen by medical. I complained that I was still having symptoms.

31) Due to the fact that I was still having symptoms, I continued to complain to all the staff in GRC about the lack of treatment, and I sought out to review my medical file.

32) Medical would eventually test me for drugs and call me crazy, as if I was not really exposed to these toxic fumes. They were in complete disbelief that I was having symptoms as a result of the confirmed exposure, based on the electronic log book entries, affidavits, and actual notices etc...

33) Defendant's in this claim are persons who acting under color of law, determine or are responsible for the conditions in the Ohio prisons, GRC, or for specific incidents referred to herein. Some of their names or capacities are unknown, as well as some dates from the employee visitor log books (located in the C-2 housing unit), electronic log entries made by the correctional officers in the C-2 housing unit in the Grafton Reintegration Center, **to Plaintiff who will seek leave to Amend this complaint to assert them when they become known.**

34) The acts and conduct of the defendant's were acts and conduct under the color of state law as defined in <u>42 U.S.C. 1983.</u>

35) Defendant Gary Mohr is the head of the Ohio Department of Rehabilitation and Corrections and is responsible for the acts and conduct of his subordinates and is further responsible for the conditions under which inmates in Ohio State Prisons are protected and cared for. The acts herein complained of were done with the knowledge, permission, consent, and participation of Gary Mohr in that Gary Mohr promulgates regulations and rules and directives governing the conditions under which inmates are protected and cared for.

15

36) No legitimate reason whatsoever existed for the defendant's to leave me subjected to these inhuman and unreasonable conditions for months.

37) The acts and conduct of the defendant's, violated the eighth amendment to the United Sates Constitution, cruel and unusual punishment.

38) As a direct, proximate, and foreseeable result of the acts and conduct of the defendants, Plaintiff was injured, was intimidated, under the circumstances which violated the aforementioned provisions of the United Sates Constitution and which conditions were wholly and irrationally cruel, unreasonable, outrageous and were-- given the entire circumstances described above-- such as would shock the conscience of the civilized world.

39) The right to medical treatment are clearly established, and secured by the constitution.

40) As a result of the practices and the totality of conditions at the Grafton Reintegration Center, the Plaintiff have been subjected to cruel and unusual punishment, suffering mental anguish, furthered by the dismissive response from the defendants, life long chronic injury, and deliberate indifference to my serious medical need.

## CLAIM ONE

Eighth and Fourteenth Amendment claim under 42 U.S.C. 1983 for the conditions of the plaintiffs confinement between the dates of **May 5th & August 31st 2017** that constituted cruel and unusual punishment in violation of the Federal Constitutions Eighth Amendment, which applies to the states through the due process clause of the fourteenth amendment. The Right to clean air, non toxic air is a basic human need. The defendant's had "Actual" and "Constructive notice", and the defendant's showed "Deliberate Indifference" to the "overall conditions" which rose to the level of cruel and unusual punishment. Being subjected to toxic fumes/gas/carbon monoxide is a deprivation of a human need and is a clearly established right. The defendant's had a culpable state of mind during this time period, because the conditions were continuing and the long duration of the cruel and unusual prison conditions, shows established knowledge and hence some form of intent. The defendant's, after repeated notification, had failed to take

16

remedial action. The prison officials had the requisite knowledge of a substantial risk, by inference from circumstantial evidence, including from the very fact that the risk was obvious. The Eighth Amendment affords prisoners protection against egregious physical conditions which deprive them of basic human needs. When the state fails to provide for a prisoner basic human needs- breathable uncontaminated air, medical care, and reasonable safety-- it transgresses the substantive limits on a state action by the Eighth Amendment.

## CLAIM TWO

Eighth and Fourteenth Amendment claim under 42 U.S.C. 1983 for the denial of medical treatment on **July 27th , 2017**. Constitutes a infliction of cruel and unusual punishment on the plaintiff. The denial of medical care is cruel and unusual because it resulted in physical torture, pain without any peneological purpose. Resulted in unquestioned and serious deprivations of basic human needs. The medical staff on shift had actual and constructive notice of the exposure and deliberate indifference to a serious medical need, that required prompt medical attention. The medical staff should have investigated the plaintiffs condition before determining that he did not require immediate care, and the decision not to do so amounts to deliberate indifference. Therefore, the decision not to see the plaintiff, particularly when the medical staff knew of the exposure to toxic fumes, gas, or carbon monoxide, smacks of reckless disregard for the health risks the plaintiff may have been facing, and shows deliberate indifference to plaintiffs serious medical and safety needs.

## CLAIM THREE

Eighth and Fourteenth Amendment claim under 42 U.S.C. 1983 for the denial of medical treatment on **August 31st , 2017**.  Constitutes a infliction of cruel and unusual punishment on the plaintiff. The denial of medical care is cruel and unusual because it resulted in physical torture, pain without any peneological purpose. Resulted in unquestioned and serious deprivations of basic human needs. The medical staff on shift had actual and constructive notice of the exposure and deliberate indifference to a serious medical need, that required prompt medical attention. The medical staff should have investigated the plaintiffs condition before determining that he did not require immediate care, and the decision not to do so amounts to deliberate indifference. Therefore, the decision not to see the plaintiff, particularly when the medical staff knew of the exposure to toxic fumes, gas, or carbon monoxide, smacks of reckless disregard for the health risks the plaintiff may have been facing, and shows deliberate indifference to

17

plaintiffs serious medical and safety needs.

## CLAIM FOUR

State law claim under ORC ANN. 2921.44 Dereliction of Duty.

(C) No officer, having charge of a detention facility shall negligently do any of the following:

(2) Fail to provide persons confined in the detention facility with adequate food, clothing, bedding, shelter, and medical treatment.

(F) Whoever violates this section is guilty of dereliction of duty, a misdemeanor of the second degree.

The defendant's had actual and constructive notice that an exposure existed in the c-2-b-side housing unit, and thus, had a duty to protect the plaintiff from the potential life threatening exposure.

## CLAIM FIVE

State law claim under ORC ANN. 2921.44 Dereliction of Duty.

(C) No officer, having charge of a detention facility shall negligently do any of the following:

(5) Fail to observe any lawful and reasonable regulation for the management of the facility.

## CLAIM SIX

State law claim under ORC ANN. 2921.45

(A) No public servant, under color of his office, employment, or authority, shall knowingly deprive, conspire or attempt to deprive any person of a constitutional or statutory right.

## CLAIM SEVEN

Mental anguish, emotional distress, psychological harm, and insomnia

**VII. Relief**

**Wherefore,** plaintiff pray that this court:

**a.** Declare that each of the defendant's, individually and collectively engaged in conduct which subjected plaintiff to the deprivation of his constitutional rights;

b. Award to the Plaintiff $30,000,000.00 as compensatory damages for the deprivation of the plaintiffs constitutional rights;

c. Award to the plaintiff $70,000,000.00 as punitive damages.

e. Award to the plaintiff interest to commence from the date of his injury; and,

f. Grant such other relief as law and equity allows,

## IX. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with requirements of Rule 11.

Signed this _10th_ day of _April_ ,2019

I declare under penalty of perjury that the foregoing is true and correct.

_April, 10th 2019_                          _Charles A. Urban_
(Date)                                              (Signature of Plaintiff)

## A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address in file with the Clerk's Office may result in the dismissal of my case.

Date of Signing: _April 10th. 2019_

Signature of Plaintiff _Charles A. Urban_

Printed Name of Plaintiff _Charles A. Urban_

Prison Identification #    66226060

Prison Address    **2240 Hubbard Road**

**Youngstown**          **Ohio**          **44505**
City                        State              Zip Code

19



CHARLES A. URBAN #66226060
2240 HUBBARD ROAD
YOUNGSTOWN, OHIO 44505

CLERK OF COURTS
CARL B. STOKES BUILDING
801 WEST SUPERIOR AVE.
CLEVELAND, OHIO 44113

LEGAL
MAIL