UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------

|  |  |  |
|---|---|---|
| CHARLES A. URBAN, | : | CASE NO. 1:19CV00914 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Doc. 1] |
| GARY MOHR, et al., | : | |
| Defendants. | : | |

------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

*Pro se* Plaintiff Charles Urban states that he is a pretrial detainee confined at the Northeastern Ohio Correctional Center.[1] He files this action under 42 U.S.C. § 1983 alleging that seventeen defendants[2] violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as certain state laws.

For the following reasons, Plaintiff's federal claims are dismissed, and his state law claims are dismissed without prejudice.

I. Background

Plaintiff alleges that on May 5, 2017, he noticed a strong odor of gas in the C-2-B-side housing unit of the Grafton Reintegration Center ("GRC"). The Ohio Department of Rehabilitation and Corrections ("ODRC") operates Grafton.

---

[1] Doc. 1.

[2] Gary Mohr (Director Ohio Department of Rehabilitation and Corrections ("ODRC"); Lashann Eppinger (Warden); Major Brown; Jennifer Gillice (Deputy Warden); Stephen Reynolds (Deputy Warden); Doe Roedik (Unit Manager Administrator); Adam Kastler (Warden's Assistant); Myron Costin (Maintenance); Lieutenant Diamond; Lieutenant Jackson; Lieutenant Lawerence; Langston (RN); Beltz (ALP); Carnahan (RN); Daniel Reed (Maintenance); Doe Wolfe (Maintenance retired); Doe Kite (Maintenance). Doc. 1 at 2-8.

Plaintiff claims that he reported the issue to correctional officers, but over the next three months, continued to notice the odor and experienced chest pains, muscle spasms, shortness of breath, headaches, nausea, and drowsiness during this time.[3]

Plaintiff states that defendants Eppinger, Gillice, Reynolds, Roedik, Brown, Diamond, Jackson, and Lawrence, as well as the maintenance department, were notified but failed to take appropriate action.[4] Plaintiff alleges that Brown believed the odor was due to a sewer problem. Plaintiff believed it was "semi burnt gas and carbon monoxide" being pulled into the housing unit by an HVAC intake fan located next to exhaust pipes on the roof from the boiler and furnace, in addition to an aged poorly maintained furnace.[5]

Because of this exposure Plaintiff says he became ill and, on July 27, 2017, a correctional officer contacted nurse Carnahan who told him to place Plaintiff in fresh air, which was done. ¶ 9. On July 28, 2017, a friend contacted the Correctional Institution Inspection Committee to inform them of the problem in the C-2-B-side housing unit at Grafton and the Correctional Institution Inspection Committee contacted the Warden.[6] On August 1, 2017, Plaintiff's friend contacted Correctional Institution Committee again, as well as the Warden and the ODRC regarding the gas odor.[7] Plaintiff indicates that the Correctional Institution Committee contacted the Warden and his assistant, defendant Kastler, who contacted defendants Costin and Reed from Grafton maintenance regarding the issue. Reed and Costin informed Kastler that "all preventative maintenance has been

---

[3] Doc. 1 ¶¶1-3.
[4] Id. ¶¶ 5-7.
[5] Id. ¶ 8.
[6] Id. ¶¶ 10-11.
[7] Id. ¶ 12.

completed on the gas regulators for the GRC housing units" and "there are no leaks."[8] But Plaintiff alleges that the problem continued and on August 25, 2017, unnamed correctional officers contacted maintenance "after smelling the gas themselves" and Plaintiff's friend contacted Columbia Gas and the Grafton Fire Department.[9]

On August 31, 2017, inmates in the C-2-B-side of the housing unit again complained of the smell of gas and a correctional officer notified defendant Reynolds.[10] Plaintiff states that he personally spoke with the State Fire Marshal, who told Plaintiff that he was aware of the issue and that the institution had hired an outside contractor to remedy the problem.[11]

Plaintiff alleges that on August 31, 2017 he was very ill due to the gas exposure and was experiencing chest pain, muscle spasms, shortness of breath, headache, drowsiness, and nausea, but that when he sought help from the medical department, defendant Langston told him to "we are not going to drop what we are doing for you" and to put in a sick call slip. Plaintiff also sought help from mental health that same day, and informed the metal health provider, Rod Krausher, about being distressed about the natural gas fumes and the symptoms he was experiencing and about his theory that the problem was poorly designed exhaust stacks.[12]

Plaintiff was seen by the medical department on September 5, 2017, and he informed defendant Beltz and a nurse that he was having symptoms related to exposure to gas and carbon monoxide. Plaintiff alleges that Beltz was disrespectful and ordered "panels" but,

---

[8] *Id.* ¶¶13-15.
[9] *Id.* ¶¶ 18-21.
[10] *Id.* ¶ 24.
[11] *Id.* ¶ 27.
[12] *Id.* ¶¶ 25-26.

according to Plaintiff, the "panels" ordered were not proper for someone exposed to fumes and gas.[13] Plaintiff was still experiencing symptoms when he was again seen by medical on September 20 and 28, 2017 and complained "to all the staff in GRC about the lack of treatment."[14] Plaintiff alleges that he was tested for drugs by medical and called crazy despite "confirmed" exposure to toxic fumes.[15]

Plaintiff asserts seven claims for relief, alleging that defendants violated his constitutional right under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment, as well as various state law claims. For relief, Plaintiff seeks a declaration that defendants' deprived Plaintiff of his constitutional rights, Thirty Million Dollars in compensatory damages, and Seventy Million Dollars in punitive damages.[16]

## II. Discussion

### A. Standard of Review

Although *pro se* pleadings are liberally construed,[17] the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[18] A claim lacks an arguable basis in law or fact when it is premised upon an indisputably meritless legal theory or when the factual contentions are clearly baseless.[19]

---

[13] *Id.* ¶ 28.

[14] *Id.* ¶ 31.

[15] *Id.* ¶ 32.

[16] *Id.* at 18.

[17] *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

[18] *Neitzke v. Williams,* 490 U.S. 319, 328 (1989); *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir. 1996).

[19] *Neitzke,* 490 U.S. at 327.

Case No. 1:19CV00914
Gwin, J.

The dismissal standard for Fed. R. Civ. P. 12(b)(6) articulated in *Bell Atl. Corp. v. Twombly*,[20] and *Ashcroft v. Iqbal*,[21] governs dismissal for failure to state a claim under § 1915(e)(2)(B)(ii).[22] A cause of action fails to state a claim upon which relief may be granted when the complaint lacks plausibility. Fed. R. Civ. P. 8(a)(2) governs basic federal pleading requirements[23] and requires that the pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief.[24] In reviewing a complaint, the Court must construe the pleading in the light most favorable to the *pro se* plaintiff.[25]

B. 42 U.S.C. § 1983

Plaintiff brings this action under 42 U.S.C. § 1983. In order to state a claim under § 1983, a plaintiff must plead that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or law of the United States.[26] Section 1983 creates no substantive rights but is a means by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.[27] The statute applies only if there is a deprivation of a constitutional right.[28] Therefore, "[t]he first inquiry in any

---

[20] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

[21] *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

[22] *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

[23] *Twombly,* 550 U.S. at 564.

[24] *Iqbal,* 556 U.S. at 677-78.

[25] *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk*, 99 F.3d at 197).

[26] *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), overruled on other grounds, *Daniels v. Williams,* 474 U.S. 327 (1986).

[27] *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979).

[28] *See e.g., Paul v. Davis,* 424 U.S. 693, 699-701 (1976); *Baker,* 443 U.S. at 146-47.

Case No. 1:19CV00914
Gwin, J.

§ 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States.[29]

Here, Plaintiff claims that defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment[30] and were deliberately indifferent to the conditions of his confinement and serious medical needs.

A claim of deliberate indifference has both an objective and subjective component.[31] The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious" and poses "a substantial risk of serious harm."[32] To satisfy the subjective component, an inmate must demonstrate that prison officials had "a sufficiently culpable state of mind," i.e. the official knew of and disregarded an excessive risk to inmate health or safety.[33]

Deliberate indifference "entails something more than mere negligence."[34] This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

---

[29] *Baker*, 443 U.S. at 140.

[30] The Eighth Amendment does not apply to pretrial detainees, such as plaintiff. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). But the Fourteenth Amendment "affords pretrial detainees a due process right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). Although the Eighth Amendment is not directly applicable to plaintiff herein, its deliberate indifference standard applies under the Fourteenth Amendment. *Id*.

[31] *Harrison v. Ash*, 539 F.3d 510, 517-18 (6th Cir. 2008).

[32] *Id*.

[33] See *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

[34] *Id*.

Case No. 1:19CV00914
Gwin, J.

that a substantial risk of serious harm exists, and he must also draw the inference."[35] A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.[36]

   C. Analysis

 1. Claim One is dismissed

In Claim One, plaintiff claims that "defendants" were deliberately indifferent to the conditions of his confinement between May 5 and August 31, 2017 because they failed to correct the air quality issues in the C-2-B-side housing unit at Grafton. As an initial matter, "asserting a generic claim against unspecified defendants is insufficient to state a § 1983 claim[.]"[37] While the Court is required to liberally construe the Complaint, it is not required to construct legal claims on plaintiff's behalf.[38]

In addition, plaintiff's factual allegations concerning gas odors do not state a plausible § 1983 claim for deliberate indifference with respect to the conditions of his confinement. "[A]bsent such extreme conditions raising serious risks to prisoner health, the courts

---

[35] *Flanory v. Bonn*, 604 F.3d 249, 253-55 (6th Cir. 2010) (quoting *Farmer*, 511 U.S. at 837).
[36] *Farmer*, 511 U.S. at 835.

[37] *Mason v. Eddy*, No. 1:18 CV 2968, 2019 WL 3766804, at *10 (N.D. Ohio Aug. 9, 2019); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188,190 (6th Cir. 2004) (generic allegations against unspecified defendants are insufficient to support a plausible § 1983 claim); *Eberhard Architects, LLC v. Bogart Architecture, Inc.*, No. 1:14 CV 1185, 2014 WL 4354561, at *3 (N.D. Ohio Aug. 29, 2014) (generic statement that "all defendants engaged in copyright infringement" constitutes nothing more than a formulaic recitation of the elements of the claim).

[38] *Beaudett v. City of Hampton*, 775 F.2d 1274,1277-78 (Fourth Cir. 1985); *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

Case No. 1:19CV00914
Gwin, J.

routinely have determined that claims concerning ventilation were insufficient to state an Eighth Amendment claim."[39]

Even if the facts of this case were sufficient to establish the objective component of deliberate indifference claim, plaintiff's claim fails on the subjective component. Plaintiff does not allege facts from which this Court can infer that defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed from the natural gas odor, and drew that inference. Indeed, defendant Brown thought the odor was due to a sewer problem.[40]

Moreover, defendants did not ignore the issue. Plaintiff alleges that defendants took steps to address the issue -- they checked the gas regulators and hired a contractor.[41] While defendants' efforts to address the ventilation issue may not have been undertaken as quickly or effectively as plaintiff would have liked, and defendants may not have countenanced plaintiff's opinion regarding the nature of the problem, they were not

---

[39] *King v. Berghuis*, No. 1:10-CV-57, 2010 WL 565373, at *3 (W.D. Mich. Feb. 13, 2010) (collecting cases and citing among authority *Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation)); *see also Wilson v. Heyns*, No. 2:14-CV-68, 2014 WL 4388593, at *2 (W.D. Mich. Sept. 5, 2014) (dismissing on screening plaintiff's § 1983 claim that he suffered dizziness and headaches from the effects of inadequate ventilation) (collecting cases and citing among authority *Davis v. Crowley*, No. 00-1475, 2000 WL 1871891, at *2 (6th Cir. Dec. 12, 2000) (concluding that a plaintiff's allegations that a ventilation system smelled strongly of gas did not allege a sufficiently serious harm where, despite his allegations that the fumes caused him to experience shortness of breath and watery eyes, the plaintiff failed to allege a substantial risk of serious harm)).

[40] Doc. 1 ¶ 8 ("Major Brown claimed that it was a sewer problem.").

[41] *Id.* ¶¶ 14, 15.

Case No. 1:19CV00914
Gwin, J.

deliberately indifferent to the issue. At most, defendants were negligent, but the standard for finding deliberate indifference is higher than mere negligence.[42]

For all of the foregoing reasons, plaintiff fails to state a plausible § 1983 Eighth Amendment claim with respect to the ventilation issues. Claim One is dismissed pursuant to § 1915(e)(2).

2. Claim Two and Three are dismissed

Plaintiff states in Claims Two and Three that the "medical staff"[43] were deliberately indifferent to his serious medical needs on July 27, 2017 and August 31, 2017 and failed to investigate his condition before determining that he did not require immediate medical care. But plaintiff's view that the medical staff should have investigated his condition before determining that he did not require immediate care may amount to medical negligence or medical malpractice, but is insufficient to state a claim for deliberate indifference under the Eighth Amendment.

In order to demonstrate a violation of the Eighth Amendment plaintiff must show both that he suffered from a "serious" medical need, and 2) that the prison officials were "deliberately indifferent" to that need.[44] "Deliberate indifference is characterized by obduracy or wantonness – it cannot be predicated on negligence, inadvertence, or good

---

[42] *See Perdue v. Morgan*, No. 1:13-CV-878, 2014 WL 4912924, at *4 (S.D. Ohio Sept. 30, 2014) (citing among authority *Farmer*, 511 U.S. at 828; *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004)).

[43] Plaintiff's generic reference to "medical staff" is insufficient to state a plausible § 1983 claim for the same reasons as discussed above.

[44] *Farmer*, 511 U.S. at 834-35.

-9-

Case No. 1:19CV00914
Gwin, J.

faith error."[45] Moreover, prisoners are not entitled to unfettered medical treatment of their choice.[46] "[D]ifferences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim."[47]

> As the Sixth Circuit has explained,[48]
>
> We distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

Plaintiff states that he was ill on July 27, 2017 due to exposure to fumes and correctional officer Phillips contacted defendant nurse Carnahan for help. Carnahan told Phillips to have plaintiff go outside for fresh air, which was done.[49] Plaintiff's disagreement regarding the adequacy of Carnahan's treatment response is insufficient to state a plausible § 1983 claim for deliberate indifference.

With respect to the August 31, 2017, events, plaintiff alleges that he was ill due to exposure to fumes and was told by medical to put in a nurse sick call slip.[50] Plaintiff states that when he arrived in medical and told defendant nurse Langston about his exposure,

---

[45] *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

[46] *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

[47] *Ward v. Smith*, 100 F.3d 958 (TABLE), 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002) (a difference of opinion between a prisoner and the prison health care provider over the adequacy of a prisoner's treatment does not amount to an Eighth Amendment claim) (citation omitted).

[48] *Westlake*, 537 F.2d at 860 n.5 (internal citations omitted).

[49] Doc. 1 ¶ 9.

[50] *Id.* ¶ 25.

Case No. 1:19CV00914
Gwin, J.

Langston responded regarding the exposure that "it is alleged and to put in a sick call slip like everybody else."[51] While plaintiff believed his symptoms constituted an emergency, Langston did not share that view regarding either the exposure itself or his symptoms and, therefore, lacked the culpable state of mind necessary to establish deliberate indifference. Langston's response at most amounts to medical negligence, which does not make out an Eighth Amendment violation.

Plaintiff was seen in medical on September 5,[52] 20 and 28, 2017, and defendant Beltz ordered "panels." But plaintiff contends that the "panels" ordered were not appropriate for someone exposed to toxic fumes.[53] Plaintiff's disagreement with the testing ordered by Beltz does not state an Eighth Amendment claim.

After being seen by medical three times in September, plaintiff states that he still had symptoms and "medical would eventually test me for drugs and call me crazy . . . They were in complete disbelief that I was having symptoms as a result of the confirmed exposure[.]"[54] Plaintiff's allegation that the "medical staff" believed he was on drugs and "crazy" and there was nothing wrong with him suggests that they did not draw the inference, or subjectively believe, that plaintiff was at substantial risk of serious harm.[55]

---

[51] *Id.* ¶ 26.

[52] To the extent that Plaintiff claims that the delay between August 31 and September 5 when he was seen by medical rises to the level of a constitutional violation, he must allege that the delay in treatment had a detrimental effect, which he does not do. *See Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (citation omitted).

[53] Doc. 1 ¶¶ 28-30.

[54] *Id.* ¶ 32.

[55] *See Weaver v. Shadoan*, 340 F.3d 398, 411-12 (6th Cir. 2003) (police officer's belief that pretrial detainee was faking an illness does not support an inference that the officer acted with deliberate indifference to the detainee's serious medical needs).

Case No. 1:19CV00914
Gwin, J.

Plaintiff fails to state a plausible § 1983 Eighth Amendment claim, and Claims Two and Three are dismissed pursuant to § 1915(e)(2)(B).

3. Claim Four, Five, Six and Seven are dismissed without prejudice

Counts Four, Five, Six, and Seven assert state law claims. The Court's supplemental jurisdiction over state law claims is governed by 28 U.S.C. § 1367, which explicitly permits the district court to decline to exercise supplemental jurisdiction when that court has dismissed all claims over which it has original jurisdiction.[56] Here, all plaintiff's federal claims have been dismissed, and there are no allegations in the Complaint that would support another basis for this Court's subject matter jurisdiction. Pursuant to 28 U.S.C. § 1367(c), the Court declines to exercise supplemental jurisdiction Claims Four, Five, Six, and Seven, and those claims are dismissed without prejudice.

### III. Conclusion

For the foregoing reasons, this case is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and is closed.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

Dated: October 23, 2019         *s/   James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE

---

[56] *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir. 1997) (a district court may decline to exercise supplemental jurisdiction over state law claims once it has dismissed all claims over which it possessed original jurisdiction).